Brent Renison (OSB 964752)
brent@entrylaw.com
Parrilli Renison LLC
610 SW Broadway, Suite 505
Portland, Oregon 97205
Telephone: +1 503 597-7190

Charles H. Wintersteen, (*pro hac vice admission forthcoming*)
chw@wintersteenpatel.com
Wintersteen Patel Law Group
53 W. Jackson Blvd., Suite 418
Chicago, Illinois 60604
Telephone: +1 312 566-0301

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# MEDFORD DIVISION

| | |
|---|---|
| NIKHILA PALLE, M.D., | Case No.: |
| Plaintiff, | |
| v. | COMPLAINT FOR REVIEW OF FINAL ADMINISTRATIVE DECISION |
| | JUDGE / MAGISTRATE JUDGE |
| KRISTI NOEM, in her official capacity as Secretary of Homeland Security; JOSEPH B. EDLOW, in his official capacity as Director of the U.S. Citizenship Director of the U.S. Citizenship and Immigration Services (USCIS); and JOHN M. ALLEN, in his official capacity as SCOPS Deputy Associate Director of Adjudications at USCIS Texas Service Center, | |
| Defendants. | |

COMPLAINT FOR REVIEW OF FINAL ADMINISTRATIVE DECISION            Page -1-

# COMPLAINT FOR REVIEW OF FINAL ADMINISTRATIVE DECISION

## INTRODUCTION

1. This is a civil action brought by Plaintiff, Nikhila Palle, M.D., under the Administrative Procedure Act. Plaintiff seeks review of a final decision of the U.S. Citizenship and Immigration Services (USCIS). The decision, issued July 3, 2025, denied a Form I-140 physician national interest waiver immigrant self-petition filed by Plaintiff on her own behalf, pursuant to 8 U.S.C. § 1153(b)(2)(B)(ii).

2. Despite record evidence showing that the Plaintiff, in compliance with the requirements of 8 U.S.C. § 1153(b)(2)(B)(ii), has agreed to practice medicine full-time in a designated underserved area in Oregon, and that the Oregon Health Authority has previously determined that Plaintiff's work in that underserved area is in the public interest, Defendants denied Plaintiff's immigrant self-petition pursuant to Defendants' assertion that Plaintiff failed to meet the requirements of a regulatory scheme which is *ultra vires* the statute.

3. Defendants' decision denying Plaintiff's immigrant petition is arbitrary and capricious and contrary to the law, namely the Administrative Procedure Act and the Immigration and Nationality Act. Plaintiff requests that this Court vacate the denial, order the Defendants to approve Plaintiff's immigrant self-petition, and order Defendants to cease their practice of adjudicating physician national interest waiver petitions in reliance on a regulatory scheme that is *ultra vires* the governing statute, 8 U.S.C. § 1153(b)(2)(B)(ii).

## JURISDICTION AND VENUE

4. This case arises under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.* and the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.* This Court has

jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as a civil action arising under the laws of the United States. This Court also has the authority to grant declaratory relief under 28 U.S.C. §§ 2201-02, and injunctive relief under 5 U.S.C. § 702. The United States has waived sovereign immunity under 5 U.S.C. § 702.

5. Venue for this action is proper under 28 U.S.C. § 1391(e)(1)(C) and Local Rule 3.2 because the District of Oregon Medford Division is the judicial district in which the Plaintiff resides. No real property is involved in this action.

## EXHAUSTION

6. Defendants' July 3, 2025 denial of Plaintiff's immigrant petition constitutes the final agency action under the APA, 5 U.S.C. §701, *et seq*. Neither the INA nor the Department of Homeland Security regulations at 8 C.F.R. § 103.3(a) require an administrative appeal of the denial. Accordingly, Plaintiff has no administrative remedies to exhaust.

## PARTIES

### PLAINTIFF

7. Plaintiff, Nikhila Palle, M.D., is a citizen of Canada, born in India, who has been practicing as a full-time hospitalist physician in H-1B nonimmigrant status, since August 26, 2024 at Providence Medford Medical Center in Medford, Oregon, a facility located in a designated Health Professional Shortage Area (HPSA).

### DEFENDANTS

8. Defendant Kristi Noem is the Secretary for the Department of Homeland Security (DHS), and as such has supervisory responsibility over USCIS, a component agency of DHS. She is being sued in her official capacity only.

9. Defendant Joseph B. Edlow is the Director of the USCIS and as such has supervisory responsibility over the USCIS Service Center Operations (SCOPS), including operations of the USCIS Texas Service Center. Mr. Edlow is being sued in his official capacity only.

10. Defendant John M. Allen is the SCOPS Deputy Associate Director of Adjudications and has overall responsibility for decisions of the USCIS Texas Service Center. The Texas Service Center adjudicates employment-based immigrant petitions arising in multiple states. Mr. Allen is being sued in his official capacity only.

## LEGAL FRAMEWORK

11. In general, pursuant to 8 U.S.C. § 1153(b)(2)(B) and 8 U.S.C. § 1182(a)(5)(A), a physician or other advanced degree professional may be classified as eligible to immigrate to the United States if a U.S. employer is offering that professional a permanent full-time position and has conducted a labor market test to demonstrate to the U.S. Department of Labor that no qualified U.S. workers are available for the position. Once the Department of Labor has certified the job offer, the employer subsequently files a Form 1-140, Immigrant Petition for Alien Worker on behalf of the professional worker. *See* 8 U.S.C. § 1154(a)(1)(F). The professional worker may then apply for adjustment of status to lawful permanent resident based on the approved immigrant visa petition. *See* 8 U.S.C. § 1255(a).

12. However, pursuant to 8 U.S.C. § 1153(b)(2)(B)(i), the Secretary of Homeland Security has discretion to waive the job offer and labor market test requirements for advanced

degree professionals if their immigration is deemed to be in the national interest.[1]

13. In 1999 Congress enacted the Nursing Relief for Disadvantaged Areas Act of 1999 ("Nursing Relief Act"), Pub. L. No. 106-95, 113 Stat. 1312 (Nov. 12, 1999), which amended the national interest waiver provisions of 8 U.S.C. § 1153(b)(2) by adding section 1153(b)(2)(B)(ii). Unlike 8 U.S.C. § 1153(b)(2)(B)(i) which grants the Secretary of Homeland Security discretion to approve certain national interest waiver immigrant petitions, the national interest waiver petition process for physicians, created by the Nursing Relief Act, is mandatory. The statute states that the Secretary of Homeland Security "…shall grant a national interest waiver pursuant to clause (i) on behalf of any alien physician…" provided two requirements are met:

(1) the alien physician agrees to work full time as a physician in an area or areas designated by the Secretary of Health and Human Services as having a shortage of health care professionals or at a health care facility under the jurisdiction of the Secretary of Veterans Affairs; and

(2) a Federal agency or a department of public health in any State has previously determined that the alien physician's work in such an area or at such facility was in the public interest. U.S.C. § 1153(b)(2)(B)(ii)(I). The two requirements listed above are hereinafter referred to as "national interest waiver requirements."

The Secretary has a ministerial obligation to approve a national interest waiver petition so long as these two statutory requirements are met.

---

[1] The INA (8 U.S.C. § 1103) initially outlined the Attorney General's powers related to immigration. However, the Homeland Security Act of 2002 (and subsequent amendments) shifted many of these powers to the Secretary of Homeland Security.

14. The national interest waiver requirements under 8 U.S.C. § 1153 (b)(2)(B)(ii) are straightforward, clearly articulated, and mandatory. Under the statute, a physician who agrees to practice full-time in one or more designated underserved areas is deemed to be serving in the national interest, provided that a state department of public health or an appropriate federal agency has previously determined that the physician's service at that location is in the public interest. Any physician who satisfies these requirements is statutorily entitled to: 1) classification as an employment-based second preference immigrant, and (2) a waiver of an employer's permanent job offer and labor market test, providing an accelerated path to lawful permanent residency.

15. A separate and distinct provision of the statute states that a physician who has received a national interest waiver is not eligible for lawful permanent resident status until the physician has practiced full-time for an aggregate of five years in one or more designated medically underserved areas, excluding any time served in J-1 nonimmigrant status. *See* 8 U.S.C. § 1153(b)(2)(B)(ii)(II), (hereinafter referred to as "adjustment of status requirements").

16. In 2000, the legacy Immigration and Naturalization Service ("INS") published an interim final rule implementing the physician national interest waiver provisions of the Nursing Relief Act. 65 Fed. Reg. 53,889 (Sept. 6, 2000) (codified at 8 C.F.R. §§ 204.12, 245.18). The regulations governing the approval of physician national interest waiver petitions were codified at 8 C.F.R. § 204.12, while the regulations addressing the adjustment of status requirements were codified at 8 C.F.R. § 245.18.

17. However, the U.S. Court of Appeals for the Ninth Circuit subsequently found several of these regulations implementing the Nursing Relief Act to be *ultra vires* and

unenforceable. *See Schneider v. Chertoff*, 450 F.3d 944 (9th Cir. 2006). In *Schneider*, the plaintiff physicians challenged five provisions of the regulations. The Court held for the plaintiffs, striking down three of the challenged provisions for exceeding the scope of statutory authority and conflicting with the plain language of the statute. The Court observed, "[a]s a matter of common sense, the Secretary's regulation produces outcomes that contradict the plain language of the statute." *Id.* at 956.

18. Specifically, the Court held that 8 C.F.R. §§ 204.12 (b) and 245.18(e), both of which require a physician to complete five years of medical practice within a limited timeframe, were *ultra vires* the statute. As the Court explained, "Congress required that an immigrant doctor work full time as a physician in a qualifying area for 'an aggregate' of three or five years before obtaining LPR status." *Id.* at 953. The Court emphasized that Congress deliberately used the term "aggregate" to allow flexibility in how the service requirement could be fulfilled, "[b]y using the word 'aggregate,' Congress intended to comprehensively include even short periods of qualifying medical practice to make the requirements flexible." *Id*. at 954. Further underscoring Congress's intent, the Court stated:

> Congress clearly intended that no limitations period should be imposed on the aggregate medical practice requirement. Congress did not impose a limitations period of its own accord. Congress instead used particular language to the contrary -- language that cannot be read to have left a "gap" for the agency to fill. Congress restricted immigrant doctors from obtaining LPR status "until such time" as the doctor had practiced in a shortage area for an "aggregate" of three or five years. See 8 U.S.C. § 1153(b)(2)(B)(ii)(II), (IV) (emphasis added). Congress did not place a

limit on "such time," demonstrating that the time period would be open-ended. Furthermore, Congress used the word "aggregate" that invokes a summation of fractured parts and contemplates interruptions. See Part IV.A. Nothing in the Nursing Relief Act can be read to authorize the Secretary to promulgate a regulation that imposes a strict limitations period. *Id* at 957.

19.    In January of 2007 the USCIS issued an interim guidance memorandum acknowledging the *Schneider* decision and agreeing that certain aspects of the physician national interest waiver regulations were *ultra vires* 8 U.S.C. § 1153(b)(2)(B)(ii).  *See* Memorandum, January 23, 2007, by Michael Aytes, USCIS Associate Director, Domestic Operations, regarding the decision by the U.S. Court of Appeals for the Ninth Circuit, *Schneider v. Chertoff,* 450 F.3d 944 (9th Cir. 2006) (hereinafter, Schneider Memo).  The USCIS stated that physicians with an approved national interest waiver will no longer be subject to a fixed timeframe for completing the medical service requirement.  Schneider Memo at 4.  The memo further stated, "This interim guidance will be followed by amended regulations to give regulatory effect to the *Schneider* decision." *Id*.  However, the interim regulations published by legacy INS on September 6, 2000 remain in effect, and the current USCIS Policy Manual continues to reflect those regulatory requirements for adjudicating immigrant petitions filed pursuant to 8 U.S.C. § 1153(b)(2)(B)(ii). *USCIS Policy Manual, Volume 6, Part F, Chapter 6, paragraph B,3.*

## STATEMENT OF FACTS

20.    In June 2024 Dr. Nikhila Palle completed her residency training in internal medicine at Washington State University, Elson S. Floyd College of Medicine in Spokane, Washington, while participating in the J-1 exchange visitor program.  As a result, Dr. Palle

became subject to the two-year home country residence requirement under 8 U.S.C. § 1182(e), requiring her to reside in Canada for two years. In 2024 Dr. Palle sought a waiver of the two-year home country residence requirement pursuant to 8 U.S.C. § 1184(*l*), through the U.S. Department of Health and Human Services' J-1 waiver program. In support of her waiver application, Dr. Palle signed an agreement to serve for three years as a hospitalist physician at Providence Medford Medical Center in Medford, Oregon—a facility located within an area designated as a Health Professional Shortage Area by the Health Resources and Services Administration of the U.S. Department of Health and Human Services.

21. Based on Dr. Palle's three-year employment agreement and the fact that her proposed practice location is within a designated physician shortage area, the U.S. Department of Health and Human Services issued a letter on April 29, 2024, addressed to legal counsel for Providence Health & Services. In the letter, the agency requested that the U.S. Department of State Waiver Review Division recommend that Dr. Palle be granted a J-1 waiver. Following this recommendation, USCIS granted Dr. Palle a change of nonimmigrant status from J-1 to H-1B. On August 26, 2024, Dr. Palle commenced full-time employment as a hospitalist physician at Providence Medford Medical Center in Medford, Oregon, where she continues to work.

22. On January 6, 2025, Dr. Palle filed a Form I-140 immigrant petition with the USCIS Texas Service Center, requesting that she be classified as eligible to immigrate to the United States as a physician whose immigration is in the national interest, pursuant to 8 U.S.C. § 1153(b)(2)(B)(ii). As evidence of her eligibility, Dr. Palle submitted detailed documentary evidence that she had agreed to serve as a physician for five years in an underserved area, which included the following:

● sworn statement signed by Dr. Palle agreeing to complete five years of service in her current position and describing her understanding of her ongoing contractual commitment to serve as an attending physician at Providence Health & Services – Oregon. Dr. Palle also confirmed that she was aware of her obligation under 8 U.S.C. § 1153(b)(2)(B)(ii)(II) to work as a physician in an underserved area on a full-time basis, at least forty hours per week, for a total of five years. In the affidavit, Dr. Palle promises to fulfill the five-year, forty-hour-per-week service obligation by continuing to practice in an area designated as having a shortage of healthcare professionals;

● letter from Shaik Basha, MD, Medical Director of the Providence Hospitalist Medford Program, confirming that Dr. Palle has been employed by Providence Health and Services - Oregon as a full-time physician since August 26, 2024, and that it is the employer's "intention to continue employing Dr. Palle until at least August 25, 2029, if not longer;" and

● copy of the "Employment Agreement" between Dr. Palle and Providence Health and Services - Oregon, stating the terms of Dr. Palle's employment as a physician at Providence Medford Medical Center in Medford, Oregon. The agreement shows that Dr. Palle will provide not less than forty (40) hours per week of patient services at Providence Medford Medical Center for a minimum of three years with the agreement automatically renewing for successive one-year terms, until one of the parties terminates the agreement.

23. In compliance with the requirements of 8 U.S.C § 1153(b)(2)(B)(ii)(I), Dr. Palle also submitted a letter issued on January 2, 2025, by the Oregon Health Authority stating that the

health department is satisfied with her qualifications, and that her work as a hospitalist physician in Medford, Jackson County, Oregon, is both in the public and the national interest.

24. In sum, Dr. Palle has demonstrated by a preponderance of evidence that she has agreed to practice as a full-time physician in a designated underserved area, and that the Oregon Health Authority has previously determined that her service at that location is in both the public interest and the national interest.

25. On July 3, 2025, the USCIS Texas Service Center denied Dr. Palle's Form I-140 immigrant petition. (hereinafter referred to as "TSC NIW Denial"). The decision asserted that 8 U.S.C. § 1153(b)(2)(B)(ii) establishes "special rules" for physicians seeking national interest waivers. The decision proceeded to rely on the 2000 regulations codified at 8 C.F.R. § 204.12. TSC NIW Denial at 2. Specifically, the Service Center cited the special rule at 8 C.F.R § 204.12(c)(1)(i), requiring a national interest waiver physician to submit, "a full-time employment agreement for the required period of medical practice … issued and dated within 6 months prior to the date the petition is filed." TSC NIW Denial at 3. The decision concluded that "the petitioner did not establish that she has agreed to work full-time (40 hours per week) in a clinical practice for an aggregate of five (5) years… Based on the evidence submitted, the petitioner has not established that she has a valid contract which was dated within 6 months prior to the date the petition was filed" TSC NIW Denial at 4.

26. Ignoring Dr. Palle's evidence that she has agreed to complete five-years of full-time employment as a physician in an underserved area and has demonstrated exactly how she will fulfill that obligation (by continuing her employment at Providence Medford Medical Center), and notwithstanding the *Schneider* court's holding that the service period may be

fulfilled through an open-ended aggregation of qualifying employment, the Service Center asserted that Dr. Palle was required to submit a full-time five-year employment contract, dated and issued within six months prior of the filing of the petition. The Service Center denied the petition for Dr. Palle's alleged failure to meet this purported requirement.

<u>**CAUSES OF ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT**</u>

**COUNT I**

**Administrative Procedure Act Violation, 5 U.S.C. § 706(2)(C)**

27. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

28. Under 5 U.S.C. §§ 702 and 704, Plaintiff has suffered a legal wrong and has been adversely affected or aggrieved by agency action.

29. This injury stems from USCIS's reliance on regulatory provisions that exceed and contradict the plain requirements of the statute. Congress explicitly withheld from the Secretary of Homeland Security discretion to create and impose special rules or restrictions on physicians seeking classification under 8 U.S.C. § 1153(b)(2)(B)(ii) beyond the eligibility criteria set forth in the statute.

30. The regulations at 8 C.F.R. § 204.12, which set forth criteria and documentary requirements for physician national interest waiver petitions, impose significant restrictions beyond those found in the statute. In those regulations, the USCIS exceeds its authority under the statute by asserting that a physician seeking classification must convince an employer to enter into a five-year employment agreement. In addition, the regulations assert, again without statutory authority, that the five-year fixed term agreement must be signed by both parties within

six months of the physician national interest waiver being filed.  8 CFR § 204.12(c).

31.     8 C.F.R. § 204.12 (a), (c) improperly conflate the statutory requirements for classification under 8 U.S.C. § 1153(b)(2)(B)(ii), i.e., the criteria for approval of a physician national interest waiver petition with those governing adjustment of status. Within the statutory framework enacted by Congress, the requirements for classification are fundamentally separate and distinct from the prohibition on granting adjustment of status to a national interest waiver physician prior to the completion of five years of qualifying employment.  *See* 8 U.S.C. § 1153(b)(2)(B)(ii)(II). By imposing an additional requirement of a five-year employment contract, signed by both the physician and an employer, as a precondition for approving the national interest waiver petition, 8 C.F.R. § 204.12 (a), (c) exceed the authority delegated to USCIS by Congress and the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).  Accordingly, the regulations at 8 C.F.R. § 204.12 (a), (c) are *ultra vires* the statute.

32.     Although the Ninth Circuit's decision in *Schneider v. Chertoff* did not explicitly address 8 C.F.R. § 204.12(c), the Court's conclusion that 8 C.F.R. § 204.12(b) is *ultra vires* and unenforceable lead directly to a similar conclusion with respect to 8 CFR § 204.12(c). Both provisions purportedly derive from the same statutory authority governing physician national interest waivers and adjustment of status, and both impose regulatory conditions not found in the statute. While section 204.12(b) unlawfully imposes a deadline for completing five years of qualifying service, section 204.12(c) requires submission of a full-time employment contract covering the entire period of clinical medical practice, at the time of filing the national interest waiver immigrant petition.  In practice, the manufactured requirements in 8 CFR § 204.12(c) unlawfully restrict eligibility for classification under the statute, to physicians who can persuade

an employer to commit, via a signed contract, to a five-year term of employment. Those requirements effectively exclude from eligibility physicians who have clearly agreed to practice in an underserved area but who may consider fulfilling the five-year service obligation by practicing at more than one shortage location.

33. In addition to being contrary to clear mandate of the statute, the regulatory demand that a physician seeking classification under 8 U.S.C. 1153(b)(2)(B)(ii) present a binding employment contract with a five-year term, cannot be reconciled with the *Schneider* court's interpretation of the statute. In *Schneider* the Ninth Circuit recognized that a national interest waiver physician may satisfy the five-year service requirement through cumulative service across different qualifying locations over an undefined period. *Schneider*, 450 F.3d at 957–58. Requiring a binding fixed-term employment contract at the petition stage frustrates the flexibility that the *Schneider* court recognized as being central to physician national interest waiver statute.

34. As applied to Dr. Palle's request for classification under 8 U.S.C. 1153(B)(2)(B)(ii), the Defendants' imposition of additional "special requirements" via 8 C.F.R. § 204.12(c) exceeds the Department of Homeland Security's statutory authority and is *ultra vires*. 5 U.S.C. § 706(2)(C). The statute mandates approval of a national interest waiver for any physician who satisfies the clearly stated requirements. Congress intentionally withheld from the Secretary of Homeland Security, the authority to impose additional eligibility restrictions beyond those enumerated in the statute. Defendants relied on such unauthorized restrictions to deny Dr. Palle's petition.

35. The statute states that a physician qualifies for a national interest waiver by

agreeing to practice full-time in a clinical setting located within a designated underserved area. The statute plainly does not require submission of a multi-year employment contract or impose additional preconditions beyond those described in 8 U.S.C. § 1153(b)(2)(B)(ii). Through its reliance on requirements listed in 8 C.F.R. § 204.12 (c), USCIS unlawfully restricted Dr. Palle's eligibility for classification as a physician whose immigration is in the national interest. By denying Dr. Palle's national interest waiver petition on this basis, Defendants unlawfully exceeded their authority under the statute.

## COUNT II

### Administrative Procedure Act Violation, 5 U.S.C. § 706(2)(A)

36.     Plaintiff incorporates the allegations in the above paragraphs as if fully set forth herein.

37.     Defendants' refusal to consider Dr. Palle's documentary evidence, which shows that she has complied with the plain requirements for the physician national interest waiver under 8 U.S.C. § 1153(b)(2)(B)(ii), is arbitrary and capricious, an abuse of discretion, and not in accordance with law; and is a violation of 5 U.S.C. § 706(2)(A).

38.     Dr. Palle demonstrated her agreement to practice in an underserved area by providing detailed documentary evidence that she has, in fact, been employed as a physician since August 2024, under a contract to serve at Providence Medford Medical Center, that she agreed to serve as a full-time physician in a designated underserved area for five years, and that the Oregon Health Authority has previously determined that her work at Providence Medford Medical Center is in the public interest. Defendants arbitrarily refused to consider that evidence.

## RELIEF REQUESTED

Wherefore, Plaintiff requests that this Court grant the following relief:

(A) Declare that the Defendants' reliance on the special requirements listed in 8 C.F.R. § 204.12(c) to deny Plaintiff's national interest waiver immigrant petition, is beyond the authority of the agency and a violation of 5 U.S.C. § 706(2)(C), and further declare that the regulations at 8 C.F.R. § 204.12(a), (c) are void;

(B) Declare that the Defendants' refusal to consider Plaintiff's evidence that she meets the criteria for a national interest waiver under 8 U.S.C. § 1153(b)(2)(B)(ii), is arbitrary, capricious, and not in accordance with law, in violation of 5 U.S.C. § 706(2)(A);

(C) Vacate Defendants' denial of the Plaintiff's national interest waiver immigrant petition;

(D) Order Defendants to approve Plaintiff's national interest waiver immigrant petition within 10-days of the date of the Court's order;

(E) Order Defendants to cease their practice of adjudicating physician national interest waiver immigrant petitions based on the regulations at 8 C.F.R. § 204.12(a), (c)

(F) Award Plaintiff her costs in this action; and

(G) Grant any other relief that this Court may deem just and proper.

Dated: December 4, 2025            /s/ Brent Renison
                                   **Brent Renison** (OSB 964752)
                                   brent@entrylaw.com
                                   Parrilli Renison LLC
                                   610 SW Broadway, Suite 505
                                   Portland, Oregon 97205
                                   Telephone: +1 503 597-7190

-and-

**Charles H. Wintersteen**
Motion for admission *pro hac vice* forthcoming
chw@wintersteenpatel.com
Wintersteen Patel Law Group
53 W. Jackson Blvd., Suite 418
Chicago, Illinois 60604
Telephone: +1 312 566-0301

**Attorneys for Plaintiff**